IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

TRACY DAVIS,

      Plaintiff,

v.                                                         15cv743 JAP/WPL

GARDNER TURFGRASS, INC.,
and GILBERT JONES,

      Defendants.

## ORDER GRANTING AMENDED MOTION FOR PROTECTIVE ORDER

Defendant Gardner Turfgrass, Inc. ("GTI") filed an Amended Motion for Protective Order seeking to have any deposition of GTI Vice President Stan Gardner occur in Denver or alternatively via telephone or video conference. (Doc. 59.) Plaintiff Tracy Davis, who filed her lawsuit in Albuquerque and previously noticed Gardner's deposition to occur in Albuquerque at her counsel's law office, filed a response (Doc. 62), and GTI filed a reply (Doc. 69). Having read and considered the briefing, case record, and relevant law, I grant GTI's motion.

GTI is a Colorado corporation with its principal place of business in Westminster, a suburb of Denver. (Doc. 59-1 at 1 (Stan Gardner Aff.).) It operates two farms in New Mexico, one in McIntosh and one in Santa Teresa, though it is in the process of selling them. (*Id.* at 2.) On February 23, 2016, Davis noticed Gardner's deposition for April 6, 2016, at Davis's attorney's law office in Albuquerque. (Doc. 37; Doc. 59 at 2.) Gardner resides in Broomfield, Colorado, also a suburb of Denver, and works at the headquarters in Westminster.

"The trial court has discretion to grant a protective order pursuant to rule 26(c) of the Federal Rules of Civil Procedure." *Morales v. E.D. Etnyre & Co.*, 228 F.R.D. 694, 696 (D.N.M.

2005). Upon a showing of good cause, the court may "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," which may include appointing a different place for the location of a deposition. FED. R. CIV. P. 26(c); *see also O'Sullivan v. Rivera*, 229 F.R.D. 187, 189 (D.N.M. 2004) (ordering that non-resident defendant's deposition occur at his place of residence in Colorado rather than as originally noticed in Albuquerque because "Plaintiff failed to establish any circumstances of undue hardship justifying [that defendant] travel to New Mexico"). "In the absence of exceptional or unusual circumstances, when a deponent resides at a substantial distance from the deposing party's residence, the deposing party should be required to take the deposition at a location in the vicinity in which the deponent resides, even if the deponent is a party." *Metrex Res. Corp. v. United States*, 151 F.R.D. 122, 125 (D. Colo. 1993); *O'Sullivan*, 229 F.R.D. at 189 (citing *Metrex*). Moreover, "the deposition of a corporation by its agents and officers should ordinarily be taken at its principal place of business." *Thomas v. IBM*, 48 F.3d 478, 483 (10th Cir. 1995) (citation and internal quotation omitted). Yet, depending on the unique "facts and equities" of the case, "[a]ny number of factors may overcome the general rule," including

> the location of counsel, the number of corporate representatives sought to be deposed, the burden on the corporation if its agents are required to travel, travel expenses of the deponents and counsel, the likelihood of significant disputes requiring resolution by the forum court, the defendant's contacts with the forum of the deposition, whether the persons sought to be deposed often engage in travel for business purposes, and the general equities of the given factual setting.

*Kelly v. Mercedes-Benz USA, Inc.*, 2015 WL 3796045, at *1 (N.D. Okla. 2015) (unpublished) (citation omitted).

GTI argues that Gardner should be deposed "at GTI's principal place of business or where he resides in Colorado" because "[n]o exceptional or unusual circumstances exist which would compel Gardner's deposition in New Mexico." (Doc. 59 at 5.) Alternatively, GTI requests

that "Plaintiff be compelled to take Gardner's deposition via videoconference" (*id.*) because Gardner occupies a critical supervisory role during this busy time of the year for GTI, and Davis "has already agreed to take defendant Jones' deposition from Virginia via Skype" (*id.* at 7).

Davis counters that Gardner came to New Mexico twice in March 2016 to visit GTI's New Mexico locations, all litigation counsel reside in Albuquerque, "[t]he travel expenses to Colorado and for the use of video conferences are significantly higher than producing Mr. Gardner for an Albuquerque deposition," and Davis offered to conduct the deposition in May, "based upon Gardner [sic] allegations that April is the busiest time of year." (Doc. 62 at 3.) Davis also argues that the factors set forth in *Kelly* weigh in her favor. (*See id.* at 3-9.)

Given the general rule articulated in *Thomas*, the inquiry here is whether this case presents abnormal or unique circumstances that necessitate deviation from the "normal procedure" of having Davis depose Gardner in Colorado. *See Thomas*, 48 F.3d 478 at 483.

The most unique circumstance I can isolate from the pleadings involves Gardner's trips to New Mexico in March 2016. That is, it may be contradictory for GTI to claim that "it would place undue hardship upon Gardner to appear for his deposition in New Mexico" in April (Doc. 59 at 2) when Gardner made two trips to New Mexico in March (*see* Doc. 62 at 2). Moreover, it may be less than forthcoming for GTI to insist that Gardner's deposition occur in Colorado when Davis sent GTI two letters in February—ahead of Gardner's trips to New Mexico in March—announcing her intention to depose Gardner in Albuquerque between the proposed dates of "March 31 – April 11, 2016." (*See id.*; *see also* Doc. 62-1 at 12, 13.)

A few things, however, lessen the significance of these circumstances. First, Gardner's business trips to New Mexico in early and mid-March occurred before Davis's proposed timeframe for the deposition in late March to early April, so Davis may not have been prepared

or available to depose Gardner during his visits. In addition, GTI notes that the parties, in early March, disagreed about the venue for Gardner's deposition, implying that GTI would not have agreed to a Gardner deposition in New Mexico in March even if Davis was fully informed and knew that Gardner was present in the state. (*See* Doc. 69 at 3.) Second, from a business standpoint, it does not seem unreasonable for Gardner, as GTI's Vice President and manager of, among other things, New Mexico operations, to make trips to New Mexico in the month immediately preceding "April[,] part of the busiest season for GTI during which it generates up to half of its annual income in the spring months." (Doc. 59-1 at 2.) In short, it seems unfair to penalize the vice president of a sod company for travelling to farms in a neighboring state to prepare and manage sod sales for an upcoming spring season.

Though Davis argues that applying the factors in *Kelly* to this case overcomes the general rule in *Thomas*, I cannot agree, primarily because the circumstances of this case are unremarkable, and granting an exception would undermine the general rule. As far as the individual *Kelly* factors, the factor addressing "the burden on the corporation if its agents are required to travel" weighs most heavily against Davis. Unlike the international automakers in *Kelly* who failed to demonstrate "significant economic loss due to the lost work time of [their] representatives," *Kelly*, 2015 WL 3796045, at *2, GTI is a much smaller company, and Gardner's affidavit states that GTI is in the midst of the "busiest season," with Gardner being "the only employee in GTI's Colorado headquarters with sufficient experience to manage GTI's day-to-day operations." (Doc. 59-1 at 2.) The economic impact of forcing Gardner to appear in New Mexico, then, as one of "three employees in GTI's Colorado headquarters," is much more pronounced than in *Kelly*. (*Id.*)

I find that the general rule in *Thomas* controls because Davis has not demonstrated any unique circumstances and the factors set forth in *Kelly* do not weigh in favor of granting an exception to the general rule.

Per *Thomas*, GTI's Amended Motion for Protective Order (Doc. 59) is granted. Davis may serve a notice of deposition on Gardner, but the deposition must occur in either Broomfield, Colorado, the place where Gardner resides, Westminster, Colorado, GTI's principal place of business, or Denver, Colorado, as GTI requests in their motion (*see id.* at 1). Alternatively, Davis may take Gardner's deposition via video conference or other such remote means as agreed upon by the parties. If Davis chooses to take the deposition via "secure web conference," GTI shall pay "the additional $225.00 required to present Gardener for his deposition," which GTI stated it was "more than willing to pay." (Doc. 69 at 9.)

IT IS SO ORDERED.

William P. Lynch
United States Magistrate Judge